[Civ. No. 14862.   Second Dist., Div. Three.   Oct. 26, 1945.]

RUBY G. BOTCHFORD, Appellant, v. EDMUND F. ALT, Respondent.

Lindelof & Perelli-Minetti for Appellant.

George W. Manierre and Paul G. Breckenridge for Respondent.

WOOD (Parker), J.—Plaintiff commenced this action to quiet title to one-third the shares of certain corporate stock to which defendant held legal title. The court sustained defendant's demurrer to the complaint, and plaintiff filed an amended complaint. Defendant demurred to the amended complaint, and the court sustained the demurrer and gave plaintiff ten days within which to amend. Plaintiff is appealing from an order and a judgment of dismissal rendered after she had failed to amend within said time.

It was alleged in the amended complaint that D. H. Botchford and the plaintiff were husband and wife for many years, and that a final decree of divorce was granted to plaintiff in 1929. A part of the final decree of divorce was set forth in the amended complaint, and in that part of the decree it was ordered that D. H. Botchford comply with the terms of an agreement between plaintiff and D. H. Botchford, dated November 26, 1924, and an amendatory agreement between said parties, dated May 17, 1928, and in particular it was ordered that D. H. Botchford pay to plaintiff one-third of

the gross salary and compensation or emoluments received by him. The amended complaint alleged further in substance that copies of said agreements were attached to the amended complaint and were made a part thereof; that in 1935 and 1936 the Rich Manufacturing Company, a corporation, "was in a precarious financial condition and was indebted to the Security-First National Bank of Los Angeles in the sum of approximately $375,000.00"; that as collateral security it pledged to said bank 12,143 "out of the 13,000" shares of its capital stock; that about January, 1936, said bank foreclosed the pledge and purchased the shares; that about 1935 said bank installed Botchford as general manager of the Rich Manufacturing Company at a salary of approximately $600 per month; that about May 27, 1936, the bank sold said 12,143 shares of stock to Botchford for $5,000; that $5,000 was "an inadequate consideration for the purchase of said 12,143 shares of stock and was in truth and fact a means to adequately compensate David Herbert Botchford for his ability and experience and his efforts to rehabilitate the Rich Manufacturing Company" (apparently it was intended to state that the *transfer of the shares* was a means to adequately compensate David Botchford); that the transfer of said shares constituted the receipt of compensation and earnings within the meaning of the two agreements (above mentioned) and the final decree of divorce; that Botchford died about July 29, 1941; that at all times prior to his death he represented to plaintiff that the title to said 12,143 shares of stock was held by Security-First National Bank, and there was "no way that said stock or any portion thereof or interest therein could be transferred to plaintiff"; that prior to his death he transferred and sold 10,943 of the said shares to defendant Alt, and said shares are represented by certificate numbers 143, 146, 147 and 148 issued to defendant; that defendant was employed by the Rich Manufacturing Company "at all times subsequent to 1935" and was under the supervision of Botchford; that defendant was familiar with the property agreements (above referred to), the judgment of divorce, plaintiff's claim to "⅓ interest in and to" said 12,143 shares of stock, and with Botchford's representations "as to the title of said stock"; that defendant was not a bona fide purchaser of said 10,943 shares of stock; that plaintiff is the owner of one-third of said 10,943 shares of stock and that defendant's claim thereto is without right.

█ The general rule is that the holder of an equitable title may not maintain a quiet-title action. Appellant contends that the general rule is not applicable herein and that this case is an exception to that rule since it is pleaded that defendant holds legal title as a mere trustee for the benefit of plaintiff and the facts are so fully pleaded in the complaint that there can be no unfairness to the defendant. She asserts further that an equitable owner may bring a quiet-title action against the legal owner when the facts are so fully pleaded that there can be no unfairness, and a declaration of legal ownership in the plaintiff may be made by the court. The question is presented therefore as to whether the complaint alleges sufficient facts to show ownership in plaintiff of a portion of the specific shares of stock acquired by defendant. Her claim to a portion of the stock is based upon the provisions of the property settlement agreement. Apparently it is her theory that under the provisions of the agreement she acquired ownership in one-third of any kind of property received by D. H. Botchford as compensation for his services, that her interest therein vested immediately in her when the property was received by D. H. Botchford, and that irrespective of the kind of property so received by him she was entitled to receive, in kind, one-third of such property. █ A part of the original agreement is as follows: "D. H. Botchford agrees to pay, as the same are received and in whatever form the same shall be received, one-half of the gross salary and compensation, in anywise received by him, or earned by him for his personal advices while in the employ of any person, firm or corporation or one-half of the net earnings (from which no deduction shall have been made for services rendered by him thereinabout) of any business to which he shall devote himself on his own account or upon the account of himself and others jointly or in association, and said sum so hereby agreed to be paid to said R. G. Botchford [plaintiff], is guaranteed to be at no time less than the sum of five hundred and twenty five dollars per month. Said sums so agreed to be paid in the last paragraph shall be paid upon draft by said R. G. Botchford, through any bank or banker, directed to D. H. Botchford at the Bank of California National Association, or any other bank or banker hereafter designated, on the first day of each and every month." The amendment to the agreement contained a provision that 33⅓ per cent be substituted "in the place and stead of fifty (50) per cent, as the percentage to be paid to R. G. Botchford from the earn-

ings and emoluments of D. H. Botchford," and waived the guarantee of a minimum monthly payment.

Appellant argues that the phrases "the same as received" and "in whatever form received," explain how payment is to be made, that is, in the same form as received by D. H. Botchford; and that the agreement is a "promise to convey a stated portion in the same form as received of any property received by D. H. Botchford as compensation, whether it be money or personalty." The phrase "the same as received" mentioned in appellant's argument does not appear in the agreement. The phrase to which appellant apparently intended to refer, namely, "as the same are received," is materially different from the phrase referred to in her argument. The phrase "as the same are received," appearing in the agreement, indicates the time of payment rather than the form of payment as suggested by the phrase "the same as received," appearing in appellant's argument. The other phrase "in whatever form received," mentioned by appellant, is also different (but not materially different) from the language in the agreement, which is "in whatever form the same shall be received."

█ The agreement as a whole shows that the parties thereto contemplated that appellant should be paid in money, and that the amount of the money to be so paid was to be determined not only by computing one-third of the money received by D. H. Botchford as compensation, but also by computing the amount of money which would be equivalent to the value of one-third of property, other than money, received by him as compensation. The paragraph of the agreement above quoted used the words "pay" and "paid" in referring to the obligations on the part of D. H. Botchford. It is therein stated: that, "D. H. Botchford agrees to *pay*," that "said sum so hereby agreed to be *paid*," that "Said sums so agreed to be *paid*," and that (said sum) "shall be *paid* upon draft." In another paragraph of the agreement it is provided that "Said D. H. Botchford shall not be required to *pay* any of the sums provided to be *paid* by him as his earnings" if at any time appellant shall have remarried. In the last paragraph of the agreement it is stated that the "sums due thereunder, shall be due and *payable*" either in the place where the contract was made or at any place he may be employed. (Italics added.) The amendment to the agreement, as above stated, contained a provision that 33⅓ per cent be substituted "as the percentage to be *paid*." (Italics

added.) It is to be noted further that the words "sum" and "sums" are used in the above quoted portions of the contract in connection with the words "pay" and "paid." It is to be noted also that the "sums" were to be "paid upon draft," drawn by appellant on the first day of every month. The use of such words as those just mentioned, pertaining to the obligations of D. H. Botchford under the agreement, indicates that he was to comply with the terms of the agreement by the payment of money. Furthermore, there was no express provision in the agreement that any particular property, thereafter to be acquired as compensation, was to be delivered or transferred to plaintiff; and there was no provision therein that an interest in any property, thereafter to be acquired as compensation, was to vest in plaintiff immediately when it was acquired or that it was to vest in plaintiff at all. It appears therefore, since appellant was to be paid in money, that the relationship between appellant and D. H. Botchford, in the matter of her claim to a percentage of his compensation, was that of creditor and debtor; and that she did not acquire any title to property received by him as compensation.

Near the close of the amended complaint there is an allegation that plaintiff is the owner of one-third of said 10,943 shares of stock and that defendant's claim thereto is without right. Although such allegation is the usual short form allegation appropriate to quiet-title actions which are based upon legal ownership, it is not a sufficient allegation herein, since plaintiff's right, if any, is entirely equitable. In *Strong* v. *Strong,* 22 Cal.2d 540 [140 P.2d 386], it is said at page 546: "Any rights that she might have to the cancellation of the deed or to the declaration of a constructive trust are entirely equitable . . . and it is settled that such rights cannot be established in an action to quiet title when the pleadings contain merely general allegations asserting defendant's ownership and denying that of plaintiff." Plaintiff does not rely upon the short form allegation above mentioned to state a cause of action but contends that the facts are so fully pleaded, as required in a quiet-title action by an equitable owner, that a "declaration of legal ownership" in plaintiff may be made by the court. As above stated, her allegations were not sufficient to show ownership in the plaintiff; nor were they sufficient to entitle plaintiff to have her alleged interest in the stock impressed with a trust or to put Alt to his defense that he was a bona fide purchaser.

■ If it be conceded that sufficient facts were alleged to entitle plaintiff to have recovered from Mr. Botchford or his estate a sum equal to the value of one-third of the stock, still no cause of action was stated for the recovery of money. There was no allegation of fraud on the part of Alt in the purchase of the stock and no allegation that, through any act of his, plaintiff was prevented from collecting from Mr. Botchford any sum which might have been due to her by reason of his acquisition of the stock.

■ It appears further that the amended complaint failed to state facts fully in other respects. The amended complaint was uncertain in that it was not alleged therein what portion of the 12,143 shares of stock was purchased by D. H. Botchford for $5,000 and was not subject to plaintiff's claim, as distinguished from the portion thereof which plaintiff asserts was transferred to D. H. Botchford by the bank to adequately compensate him and was subject to her claim of ownership. In other words it appears from the amended complaint that a part of the consideration for the 12,143 shares was $5,000 paid by D. H. Botchford, and the other part of such consideration was the services rendered by D. H. Botchford. Plaintiff asserts equitable ownership in one-third of all the 12,143 shares even though she alleges in effect that a portion thereof was not transferred to him as compensation for his services, but was purchased by him for $5,000. She asserts equitable ownership in one-third of the 10,943 shares which were transferred to defendant Alt, and does not allege what portion thereof, if any, was purchased with the $5,000, and does not allege whether the 1,200 shares which were not transferred to defendant Alt were retained by D. H. Botchford and became a part of his estate, or if the 1,200 shares became a part of his estate whether all of those 1,200 shares constituted a part of the one-third of the 12,143 shares to which she claims she was entitled.

The amended complaint was also uncertain in that it did not allege the value of the 12,143 shares at the time the bank foreclosed the pledge, and did not allege what amount the bank paid in purchasing those shares at the foreclosure. Although it was alleged the Rich Manufacturing Company was in a precarious financial condition, it was not alleged to what extent it was in such condition. In other words sufficient facts were not alleged, as to the value of the shares and the financial condition of the company, from which it could be

determined that $5,000 was an inadequate consideration.

It was also alleged that D. H. Botchford was installed by the bank as manager of the Rich Manufacturing Company "about 1935" at a salary of $600 per month. It therefore appears that he was installed as such manager before the bank foreclosed its pledge and acquired control of the company in January, 1936. Since the bank sold the 12,143 shares (of the 13,000 issued shares) on May 27, 1936, to D. H. Botchford, it appears that the bank had control of the company less than 5 months. The amended complaint is therefore uncertain as to whether the 12,143 shares (which was the entire interest of the bank and practically all the stock of the company) were transferred to Botchford to "adequately compensate" him for his services rendered during a period of less than 5 months, or to compensate him for services rendered by him during that period and for a period of time prior thereto, that is, from the time he was installed as manager, "about 1935."

The order and judgment are affirmed.

Desmond, P. J., and Shinn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 20, 1945.